*1016
 
 OPINION
 

 Per Curiam:
 

 Appellants Terry Gordon, John Sweeney, and George A. McClarty, Jr. are allegedly involved in the operation of Chase, Ltd., a corporation which operates adult-oriented nightclubs in Clark County, Nevada.
 
 [1]
 
 Appellants are under investigation for operating “sex-tease” clubs, where patrons are induced to purchase expensive bottles of non-alcoholic champagne and led to believe that they will receive sexual favors from female club employees in return. Appellants were served with a “Notice of Intent to Seek Indictment.” The notice advised appellants that they had “been investigated for the crimes of: Obtaining Money Under False Pretenses (Felony — NRS 205.380, 195.020); Attempt to Obtain Money Under False Pretenses (Felony — NRS 193.330, 205.380, 195.020) and Racketeering (Felony-NRS 207.400), occurring on or between October 23, 1991 and February 9, 1993.” The notice informed appellants that they had five days in which to contact the district attorney’s office and inform it whether appellants wished to testify before the grand jury in their own behalf or “present any evidence which tends to explain away the crimes.” Counsel for Terry Gordon, immediately wrote to the district attorney and informed him that Gordon wished to testify. Counsel also requested the State provide him with copies of all documents seized from Chase, Ltd. and with the “dates, times, and places of the events” which formed the basis of the proposed indictment so that counsel could point the State to evidence that would tend to explain away the charges against his client.
 

 On August 27, 1993, appellants filed a petition for writ of mandamus to require the State to
 

 disclose to [appellants] immediately ... the names of the persons whom [the State] alleges were defrauded, or
 
 *1017
 
 attempted to be defrauded, a description of the false pretenses alleged to have been employed by Petitioners, the date and premises upon which the alleged crimes occurred, the parties directly involved in the claimed criminal conduct, descriptions of the predicate acts and theory upon which racketeering is alleged to have been committed, and a description of the property that [the State] alleges to be forfeitable ....
 

 The State opposed the petition. Following a hearing, the district court denied appellants’ petition, and this appeal followed.
 

 Appellants contend that in order for them to exercise their right to testify, and in order for the State to fulfill its duty to apprise the grand jury of exculpatory evidence, appellants must be given the information they seek, so that they might point out to the State where such exculpatory evidence lies. We conclude that appellants seek an unwarranted expansion of the rights of grand jury targets and accordingly dismiss their appeal. Appellants’ argument may be summarized in this way: Appellants have a right to testify before the grand jury, and the State has an obligation to present exculpatory evidence to the grand jury; without specific information about the charges, appellants cannot meaningfully exercise their right to testify and cannot direct the State to exculpatory evidence; therefore, appellants’ rights have been violated.
 

 The State’s obligation to present exculpatory evidence to the grand jury is established in NRS 172.145(2) which provides that “[i]f the district attorney is aware of any evidence which will explain away the charge, he [or she] shall submit it to the grand jury.” The right of a grand jury target to testify before the grand jury is set forth in NRS 172.241(1) which provides that
 

 [a] person whose indictment the district attorney intends to seek or the grand jury on its own motion intends to return, but who has not been subpoenaed to appear before the grand jury, may testify before the grand jury if he [or she] requests to do so and executes a valid waiver in writing of his [or her] constitutional privilege against self-incrimination.
 

 Appellants rely primarily on several recent decisions of this court to support their position that these two statutes require disclosure of the information they seek. First, in Sheriff v. Marcum, 105 Nev. 824, 783 P.2d 1389 (1989), this court held that a grand jury target’s statutory right to testify before the grand jury would be meaningless unless the State were required to give
 
 *1018
 
 that target reasonable notice of the grand jury proceedings.
 
 See also
 
 Sheriff v. Walsh, 107 Nev. 842, 845, 822 P.2d 109, 111 (1991) (“Being given the opportunity to ‘explain away the charges’ is tantamount to being given the opportunity to exercise the right to testify.”). In Sheriff v. Frank, 103 Nev. 160, 734 P.2d 1241 (1987), this court expounded on the prosecutor’s obligation to present exculpatory evidence to the grand jury, affirming a district court order granting a pre-trial writ of habeas corpus to a grand jury target because the prosecutor had failed to present to the grand jury exculpatory evidence of which the prosecutor was aware.
 
 Id.
 
 at 164, 734 P.2d at 1244. The court noted in dicta that “[t]he grand jury’s ‘mission is to clear the innocent, no less than to bring to trial those who may be guilty.’ ”
 
 Id.
 
 at 165, 734 P.2d at 1244 (quoting United States v. Dionisio, 410 U.S. 1, 16-17 (1973)). According to appellants, the sum teaching of these cases “reflect[s] a firm appreciation by this Court that the statutory rights afforded to grand jury targets by the Nevada Legislature are actual, and must be capacitated to retain their meaning.” We do not disagree with this characterization, however, it does not resolve the current question before the court.
 

 We consider Sheriff v. Bright, 108 Nev. 498, 835 P.2d 782 (1992), to be more informative on the question presented in this appeal than the cases which appellants have cited. In
 
 Bright,
 
 two grand jury targets, Bright and Harvey, petitioned for a writ of habeas corpus.
 
 Id.
 
 at 499, 835 P.2d at 783. Bright argued that his right to counsel had been violated because the State did not provide him with counsel for his appearance before the grand jury.
 
 Id.,
 
 835 P.2d at 783. Harvey, on the other hand, conceded he had counsel, but argued that he was deprived of
 
 effective
 
 counsel because he was denied access to discovery prior to the grand jury proceedings.
 
 Id.,
 
 835 P.2d at 783. The court first noted that Nevada has, by statute, provided greater protections than those traditionally provided to grand jury targets.
 
 Id.
 
 at 501-02, 835 P.2d at 784-75. The court, however, “decline[d] to read more into the laws governing the rights of persons targeted by grand juries than is apparent.”
 
 Id.
 
 at 502, 835 P.2d at 785. The court noted that “nowhere in
 
 Marcum
 
 or in subsequent opinions have we suggested that the full panoply of rights enjoyed by criminal defendants attaches to persons targeted by grand juries.”
 
 Id.,
 
 835 P.2d at 785. The court then concluded that indigent grand jury targets do not have a right to state-appointed counsel.
 
 Id.,
 
 835 P.2d at 785.
 

 With regard to Harvey’s argument that he was denied effective counsel because he could not conduct discovery prior to the grand jury proceeding, the court concluded that
 

 
 *1019
 
 Inability to obtain copies of the evidence to be presented to the grand jury did not render Harvey’s counsel ineifective. . . . “[I]t may well be true that in some cases preindictment investigation could help a defendant prepare a better defense. But, as we have noted, our cases have never suggested that the purpose of the right to counsel is to provide a defendant with a preindictment private investigator . . . United States v. Gouveia, 467 U.S. 180, 191 (1984).
 

 We do not now consider it practical or prudent to extend discovery rights to persons under investigation by grand juries.
 

 Id.
 
 at 503, 835 P.2d at 785-86 (emphasis added).
 

 Appellants attempt to distinguish
 
 Bright
 
 from the instant case because they do not seek State-appointed counsel or “copies of the evidence that the State will present to the grand jury.” Appellants also point out that
 
 Bright
 
 involved grand jury targets who were members of “lawless gangs.” Although the court did indeed emphasize this fact in its opinion,
 
 Bright
 
 cannot fairly be read as applying only to members of street gangs;
 
 Bright
 
 militates strongly against appellants’ position.
 

 Although appellants vehemently protest that they are not seeking discovery, merely notice, we have difficulty seeing appellants’ extensive requests as anything but requests for discovery.
 
 [2]
 
 The information requested by appellants — dates, times and places of transactions, the names of all persons involved in those transactions, and the nature of the acts which allegedly constitute criminal conduct — is extremely broad-ranging. If the production of such information were to become the norm, it could endanger
 
 *1020
 
 the secrecy of grand jury proceedings and might even allow grand jury targets to intimidate witnesses, tamper with evidence or otherwise interfere with the legitimate function of the grand jury.
 

 As we noted in
 
 Bright,
 
 this court, in step with the United States Supreme Court, is reluctant to expand the rights of grand jury targets and make them coextensive with those of criminal defendants.
 
 See
 
 United States v. Calandra, 414 U.S. 338, 343 (1973) (the operation of the grand jury “generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials”)- If we were to grant the expansion of rights here requested we would run the risk of unnecessarily prolonging and complicating what is by its very nature an investigative process limited to the determination of probable cause rather than guilt. NRS 172.155. If disclosure of the information appellants request is statutorily mandated, then one would question why a “reasonable” time to prepare to testify, or to review documents, or to consult with one’s attorney would not be equally necessary. We are of the view that “[t]o convert a grand jury proceeding from an investigative one into a mini-trial of the merits would be unnecessarily burdensome and wasteful, since, even if an indictment should be filed, the defendant could be found guilty only after a guilty plea or criminal jury trial in which guilt was established beyond a reasonable doubt.” United States v. Ciambrone, 601 F.2d 616, 622 (2d Cir. 1979). The relief appellants request would be one more step in that direction.
 

 In conclusion, we are unwilling to expand the rights of grand jury targets beyond those expressly provided by statute. Although appellants assert they seek only “notice,” what they truly seek is limited preindictment discovery. The conduct in which appellants are alleged to have engaged, although occurring at different times and locations, is virtually identical. Appellants have been notified of the crimes for which they are being investigated, the manner in which it is alleged those crimes were perpetrated, and of the several locations and the general time frame in which the crimes allegedly took place. We conclude that this is all that “notice” requires in this context. We are not unsympathetic to grand jury targets who are faced with numerous charges and who cannot obtain exact and specific information of the sort which appellants seek here. This dilemma, however, only surfaces because the Nevada Legislature has chosen to extend the right to testify to grand jury targets, a grant of grace that it was not constitutionally required to make. Finally, the exceptions to the notice requirement set forth in Nevada’s statute and in the ABA Model Grand Jury Act provide strong evidence that the right to testify is a
 
 *1021
 
 conditional and limited right.
 
 See
 
 NRS 172.241(2) and (3); American Bar Association,
 
 ABA Model Grand Jury Act,
 
 § 102, cmt. at 22-23 (1982).
 

 Because of our decision on the merits of appellants’ claim, we do not reach the question of whether mandamus is an appropriate remedy in this situation.
 

 For reasons discussed above, the decision and order of the district court are affirmed.
 

 [1]
 

 Since the filing of this appeal, a grand jury indictment has been returned against appellants Gordon and Sweeney, but not appellant McClarty. The State thereafter filed a motion to dismiss this appeal as moot. We agree that this appeal is moot as to appellant McClarty, and accordingly, the motion to dismiss this appeal is granted as to appellant McClarty. Because the outcome of this appeal could still have substantial practical consequences for appellants Gordon and Sweeney and because we see the need to provide additional guidance to public officials and the trial courts on this question, we deny the State’s motion to dismiss this appeal in its entirety.
 

 [2]
 

 Appellants suggest that one way to accommodate their requests would be for this court to order the prosecutor to give appellants a copy of the proposed indictment and a “few weeks” to review documents. First, it is sheer speculation to posit that the State has a complete indictment prior to the convening of the grand jury. The grand jury is not a mere rubber stamp; it has broad investigatory powers and may very well uncover matters beyond those the prosecutor initially envisioned. Furthermore, if the grand jury did go beyond the scope of what the prosecutor initially had in mind, defendants would no doubt argue they were denied due process because they did not have adequate notice of the new charges which the grand jury uncovered. This would unduly hamper the legitimate investigatory function of the grand jury.
 
 See
 
 NRS 172.175 (grand jury may inquire “into any and all matters affecting the morals, health and general welfare” of the public). Secondly, NRS 174.245 provides that a court may not order the discovery of “reports, memoranda
 
 or other internal state documents made by state agents
 
 in connection with the investigation or prosecution of the case.” (Emphasis added.)